J. T. ENTERLINE & SON, Appellee, v. L. A. ANDREW, State
Superintendent of Banking, et al., Appellants.

No. 40124.

JUNE 23, 1930.

REHEARING DENIED NOVEMBER 18, 1930.

*Addison & Smedal,* for Nevada Poultry Company, appellant.

*Welty, Soper & Welty,* for L. A. Andrew and V. R. Semans, appellants.

*Lee, Steinberg & Walsh,* for appellee.

MORLING, C. J.—It will assist in the consideration of the pleadings and evidence if we premise a few well settled legal principles. A check may be received as conditional payment, or it may be accepted as full payment and in extinguishment of the original indebtedness, in which last event the remedy of the creditor is upon the check. *Rohrbach v. Hammill,* 162 Iowa 131; 48 Corpus Juris 619. A principal has an election to repudiate or ratify an unauthorized transaction. 2 Corpus Juris 468. Ratification is equivalent to prior authority. 2 Corpus Juris 516. Acceptance and retention of benefits of an unauthorized act constitute ratification. To an understanding of the issues a tedious statement seems to be unavoidable.

On December 31, 1926, plaintiffs shipped to defendant the Nevada Poultry Company, a carload of poultry, of the value of $2,328.91, and drew their sight draft upon the Nevada Poultry Company, with bill of lading attached. The sight draft was made payable to the Security Savings Bank. That bank gave plaintiffs credit for the sight draft. The Continental & Commercial National Bank of Chicago was a correspondent bank of the Security Savings Bank. About January 1, 1927, the Nevada Poultry Company received the carload of poultry. ''The car came in ahead of the bill of lading.'' The People's Savings Bank received the sight draft and bill of lading on January 5, 1927, and on that day the Nevada Poultry Company took them up. The Nevada Poultry Company was a customer of the People's Savings Bank. When the People's Savings Bank presented to the Nevada Poultry Company the sight draft and bill of lading, the Nevada Poultry Company gave to the People's Savings Bank the Nevada Poultry Company's check on the People's Savings Bank for the amount of the check. The People's Savings Bank charged the check to the Nevada Poultry Company's account, and on January 5, 1927, drew and remitted its draft on the First National Bank of Chicago for the amount of the sight draft. This bank draft was payable to the order of the Continental & Commercial National

Bank, and bears the indorsement of the Continental & Commercial National Bank to the order of the Security Savings Bank, without recourse. On January 5, 1927, the Nevada Poultry Company deposited with the People's Savings Bank $9.14 and $8,402.-83, and drew upon the account various checks, including that for the sight draft in question, the result of which was that, as found in *Andrew v. Peoples Sav. Bank of Nevada,* 207 Iowa 948, there was available for payment tó plaintiff on its check $507.91. The testimony in this case is:

"On the Poultry Company's claims, check for $110.07, payable to J. L. Evans, 1/5/27, was charged in the account that day. I can't pick them all out individually. They started out overdrawn on that day. On that date there was deposited $9.14 and $8,402.83. The result would be, on the day's business, an overdraft of $1,825.67. I say I do not know which check or group of checks created the overdraft. The entire day's business created the overdraft, but I can't tell the way they were treated there, myself. * * * there is a group of checks listed as having been charged to that account on January 5th, 1927. I can't tell what particular time the check was made and honored by the bank, to satisfy this sight draft. There is no way of telling, when a number of checks, 25 or 30, is all posted on the same day. There is no way of telling what checks cause the overdraft, or whether the entire total of the checks caused the overdraft. * * * I do not believe I can state definitely, since there was a number of checks issued, that the one particular check, $2,328.96, created the overdraft. * * * Q. Do you mean that all the other check holders represented by these different checks charged against this account on January 5th, 1927, received their money? A. I do not know. I couldn't testify to that, because I do not know whether they did or not."

The People's Savings Bank took the Nevada Poultry Company's check on itself for the amount of the sight draft, $2,328.96, and on the same day, January 5, 1927, issued its draft on the First National Bank of Chicago for $2,328.96, payable to the Continental & Commercial National Bank. The People's Savings Bank ceased to function January 6, 1927, in consequence of which the Chicago draft drawn by it for $2,328.96 was not paid. Defendant L. A. Andrew, as superintendent of banking, im-

mediately took charge of the People's Savings Bank. On February 24, 1927, plaintiff made proof of claim against L. A. Andrew, as receiver of the People's Savings Bank, on the unpaid draft drawn on the First National Bank of Chicago for $2,328.96, asserting a preference because the draft operated as an assignment of funds in the First National Bank of Chicago; because it created a trust fund; because the parties having an interest in the draft "were not buying the credit of the drawer bank, but were only intending that said drawer bank should be their agent in making the transfer of the amount named in the draft;" because the payee acted promptly in presenting the draft; because the People's Savings Bank closed before the payee had an opportunity to present the draft for payment; and because of other reasons not necessary to enumerate. The receiver allowed the plaintiff's claim as a general claim. Plaintiff filed exceptions, on the ground, among others, that the draft "operated as a *pro tanto* assignment of the funds in the hands of the drawee bank, the First National Bank of Chicago," as well as for the other reasons set out in the demand for preference. The district court established the preference, which this court reduced to $507.91. *Andrew v. Peoples Sav. Bank of Nevada,* 207 Iowa 948. The $507.91 was allowed as a preference because it was found that that was the amount in the fund on which the check was drawn, and the amount which passed into the hands of the receiver. This court denied the preference as to the balance of the claim, which was thereby left as a general claim in favor of the plaintiff and against the receiver. In the opinion in 207 Iowa 948 it is said:

"It was stated in oral argument that the Nevada Poultry Company had never in fact paid the bank the check in full, and that it had an overdraft in its account; and some discussion was had as to the liability of the poultry company for such overdraft, either to the bank or to the claimant. We find nothing in the actual record before us on that subject, nor is the Nevada Poultry Company a party in the procedure. Whatever rights the claimant may have in that direction are not prejudiced by this proceeding."

This opinion was filed November 20, 1928. On December 28, 1928, the plaintiffs filed their petition in this case, in which they allege that they are a partnership; that they shipped the carload

of poultry about January 1, 1927; that they instructed their (Security Savings) bank at Eagle Grove to send the bill of lading with sight draft to the People's Savings Bank of Nevada, as an item for collection only; that the Security Savings Bank did send to the People's Savings Bank the bill of lading and sight draft; that, about January 5, 1927, the People's Savings Bank received the bill of lading and sight draft, and on the same day, the Nevada Poultry Company obtained from the People's Savings Bank the bill of lading and gave to the People's Savings Bank its check upon itself for $2,328.96, and took possession of the car of poultry; "that, at the time the Nevada Poultry Company received the bill of lading from the People's Savings Bank, and at the time it issued and delivered its check for the sum of $2,328.96, it had in its account with the People's Savings Bank of Nevada, Iowa, upon which said check was drawn, the sum of $507.91, and if said check was in fact and law paid in excess of the amount of its credit in said account, the same was paid by an overdraft;" that the People's Savings Bank ceased business, and defendant Andrew became receiver; that, about the first day of April, 1927, the plaintiff filed with the receiver a claim for $2,328.96, "and claimed a preference in payment of the same;" that, in the classification of claims, the receiver classified plaintiff's claim as a general claim, and plaintiff filed objections to the classification; that, on August 26, 1927, the district court sustained the objections of plaintiff and established the claim as a preferred claim for the full amount; that the defendant Andrew appealed to the Supreme Court, and the Supreme Court, in its decision in 207 Iowa 948, "fixed and determined the relation between the plaintiff and the People's Savings Bank as that of principal and agent, and that the sight draft and bill of lading hereinbefore referred to were sent for collection;" that, "by the decision of the Supreme Court, the decision of the district court was modified by allowing the plaintiff a preference for $507.91, which amount was in the account of the Nevada Poultry Company at the time it issued its check in payment of the sight draft, on January 5, 1927. * * * that the $507.91 was money held in trust by the People's Savings Bank of Nevada, Iowa, and later by the defendant receiver, for the benefit of the plaintiff herein, and that likewise the overdraft or the claim for unpaid balance upon said sight draft for the sum of $1,821.05 was a chose in action, held in

trust by the People's Savings Bank, and later by the defendant receiver, for the benefit of the plaintiff. * * * that it has at no time received'' from the bank or the receiver the $507.91, nor has it received from the bank or its receiver, by way of assignment or otherwise, the overdraft or claim for unpaid balance upon said sight draft for the sum of $1,821.05.

"Plaintiff further states that it is informed that the defendant the receiver of the People's Savings Bank of Nevada, Iowa, and the defendant the Nevada Poultry Company have attempted to convert said overdraft or claim for balance due on said claim to their own use. * * * that it [plaintiff] does not know the facts regarding the attempted settlement made between the receiver of the People's Savings Bank and the Nevada Poultry Company, if any settlement was made, but it says that the said overdraft or claim resulting from the transaction herein set forth was its property absolutely, and that any action taken by the defendants was taken with full knowledge of this plaintiff's rights, and this plaintiff is entitled to a full accounting for said overdraft, or for said claim or the value thereof. * * * That the Nevada Poultry Company is now, and was at all times herein mentioned in this petition, a solvent and going concern, and that the overdraft for the sum of $1,821.05 as a chose in action was worth its face value. * * * That it [plaintiff] has no plain, adequate, and speedy remedy at law, but in equity only.''

The prayer is:

''That the defendants, and each of them, be ordered to account to the plaintiff herein for the proceeds of the sight draft in the principal sum of $2,328.96; that the [they] account to the plaintiff for the sum of $507.91, with interest at 6 per cent, * * * which amount the defendant Poultry Company had with the People's Savings Bank on January 5, 1927; and that said defendants account to the plaintiff for the overdraft of $1,821.05, together with interest, * * * and for such other and further relief as may be'' equitable.

It will be seen that, when the petition in this case was filed, the plaintiff had elected to retain the bank draft and to claim the liability of the People's Savings Bank upon that draft. It made claim on the bank draft, and asked that its claim be es-

182

tablished as a preference. The claim was established as a preference finally in the sum of $507.91. It has a general claim as to the balance, so that the plaintiff has, in substance, a judgment against the bank in the way of an allowed claim against the receiver for the full amount of the bank draft. Obviously, plaintiff could not hold and recover judgment against the bank on the bank draft which was taken in payment of the sight draft, and at the same time claim that the bank draft was not paid, and that it was entitled to judgment against the drawee of the sight draft or for the car of poultry which the sight draft represented (*Sackett v. Farmers State Bank of Boone*, 209 Iowa 487) ; and plaintiff does not in its petition make such inconsistent claims.

Plaintiff's evidence is that it did not discover that the Nevada Poultry Company's account was overdrawn until the trial of the claim for preference against the receiver; so plaintiff alleges here that, if its check was, in fact and in law, paid in excess of the amount of its credit, "the same was paid by an overdraft."

The petition fully sets out the facts, and the facts show that the plaintiff had accepted the bank draft and resorted to its remedy upon, not the sight draft, or to recover the consideration for the sight draft, but to recover upon the bank draft. If, in settlement for the overdraft, the Nevada Poultry Company had given its note, the plaintiff, in harmony with the theory of its petition here, would be claiming that that note should be paid to plaintiff. Plaintiff is alleging, however, that the overdraft "as a chose in action was worth its face value," and that defendants have attempted to convert the overdraft "to their own use," and the petition asks an accounting, not for the car of poultry or the sight draft, but "for the proceeds of the sight draft," and accounting "for the overdraft of $1,821.05, together with interest." So it is plain that the plaintiff is seeking to recover the overdraft and payment of the $507.91 as "the proceeds of the sight draft." Clearly, the plaintiff is seeking to recover on a petition against its agent (the People's Savings Bank) for the proceeds of the sight draft, as having been paid to the agent by means of the $507.91 and the overdraft (or chose in action). On such allegation and prayer, plaintiff is not entitled to recover against the drawee of the sight draft, or for the price of the car of poultry as not having been paid. The theory of the petition and reply is that the carload of poultry was paid

for by means of the sight draft and payment of the sight draft through the bank draft.

The Nevada Poultry Company answered that it issued its check in payment of the sight draft, and the check was paid; that, in the administration of the receivership, the Nevada Poultry Company "were entitled to claims against the said receivership in amounts in excess of said overdraft, and that, on demand of said receiver, and pursuant to orders of court in said receivership, defendants were allowed claims in excess of said overdraft, and the said overdraft was fully paid by the allowance of the said claims * * *; that they have made full payment of all claims of every kind and character due to the Peoples Savings Bank, or the receiver thereof, including the amount of said sight draft in the sum of $2,328.91."

The Nevada Poultry Company filed no pleading forming an issue or cross-petition with the People's Savings Bank or its receiver. The receiver answered that plaintiff has not received the $2,328.96 from the People's Savings Bank, "averring, however, that it has in its possession the sum of $507.01, which they are willing and able to deliver to the plaintiff, and hereby bring the same into court, and tenders the same to the plaintiffs." The receiver alleges that the People's Savings Bank received the sight draft and bill of lading and presented them to the Nevada Poultry Company, and that the Nevada Poultry Company gave to the People's Savings Bank a check upon itself for the full amount of the sight draft; that, at the time the check was given, "the said Nevada Poultry Company only had in said account the sum of $507.01, which left an overdraft against said account of Nevada Poultry Company in the sum of $1,821.95;" that said receiver listed as an asset of said bank said overdraft. The answer sets out the filing of claims, the classification, and the exceptions of plaintiff, the finding in favor of the plaintiff, the appellee, and alleges:

"That at said hearing, as aforesaid, these defendants not having allowed the offsets asked for by said Nevada Poultry Company, and in which hearing the plaintiffs participated without objections to the contention of said Nevada Poultry Company, the court allowed said Nevada Poultry Company an offset against the overdraft hereinbefore referred to, and that the plaintiffs herein never filed objections thereto * * * That the offsets al-

lowed said Nevada Poultry Company were upon items which said Nevada Poultry Company was not entitled to a depositor's claim upon the same.''

The receiver sets up the preference allowed by this court to the plaintiff for $507.91, and general claim for the balance; ''that any and all rights that they [plaintiffs] have had against these defendants have been adjudicated, and they are now estopped from seeking any redress against these defendants.'' The receiver files no cross-petition, and takes no issue with the Nevada Poultry Company.

Plaintiff filed reply, setting up an estoppel against the Nevada Poultry Company from claiming that it was not the Nevada Poultry Company's check that caused the overdraft, for the reason that the Poultry Company's manager had testified, on the hearing of the objections to the classification, that it was such check that caused the overdraft; and plaintiff relied upon it. The reply sets up further estoppel against the Nevada Poultry Company from asserting election of remedies, in that, on the hearing upon the classification, one of plaintiff's partners represented to plaintiff ''that he paid to the Peoples Savings Bank the sum of $2,328.96, being the amount due upon the sight draft for the car of poultry. * * * that, in the prosecution of its claim for a preference on the 26th day of August, 1927, it believed the statements of the said C. T. Irish [partner] in respect to the payment of the sight draft;'' that the plaintiff did not know of any overdraft in the account until that fact was developed on cross-examination, when plaintiff was proving its claim for a preference. The reply further alleges that, when the People's Savings Bank closed, the Nevada Poultry Company's account was overdrawn $1,821.05; that the Nevada Poultry Company had no offset to the overdraft; and that the overdraft did not constitute a payment of the sight draft. The reply further states that the deposit claims by the Nevada Poultry Company against the overdraft are only general claims; that, at the time the Nevada Poultry Company acquired those claims, it knew that the People's Savings Bank was the agent of the plaintiff; that at no time has the Nevada Poultry Company tendered for the car of poultry other than the sum of $507.91, but has persistently refused to pay claimant the amount due for the car of poultry, as represented by the sight draft, which claim is

still the property of the plaintiff. The reply further states that plaintiff's rights arising since the decree on the objections to the classification "in the conversion of the overdraft or claim of the plaintiff have never been passed upon or adjudicated." The reply further states that the receiver, knowing that the People's Savings Bank was the agent of the plaintiff, and that the bank "converted the claim of the plaintiff herein for the car of poultry, as represented by the sight draft, in using said claim of the plaintiff herein as an offset against claims presented by the defendant, the Nevada Poultry Company."

The reply further states that:

"The conversion of its claim by the defendant L. A. Andrew, superintendent, took place after the hearing on August 5, 1927, at which time the claim of the plaintiff was allowed by the district court of Story County, Iowa, as a preferred claim. Plaintiff further states that, because of the fact that the conversion as aforesaid took place after said order, it was not and could not have been adjudicated in the appeal * * *; that it [plaintiff] did not know of the conversion until long after the appeal had been taken, and did not know the manner of the conversion until the trial of the present case," when the examiner in charge produced a statement showing that, notwithstanding the fact that the account of the Nevada Poultry Company with the People's Savings Bank had been overdrawn, the Nevada Poultry Company was actually receiving from the receiver dividends based upon a depositor's claim.

An amendment to the answer of the Nevada Poultry Company alleges that plaintiff filed its claim with the receiver, with the bill of lading and sight draft, claiming a preference, and prosecuted the claim to a determination, thereby electing their remedy, and precluding themselves from changing position; that plaintiff knew of the classification of the Nevada Poultry Company's claim, and made no objection.

While there is in the reply an assertion that plaintiff has not been paid for the poultry, it seems to be clear that the whole theory of the plaintiff's case was that the People's Savings Bank was plaintiff's agent, had collected the $507.91, and had procured a chose in action in the shape of an overdraft for the balance; that this chose in action was converted by the Nevada Poultry Company and the receiver; and that plaintiff is entitled to re-

cover for such conversion. If the overdraft was a chose in action belonging to the plaintiff, it could only be because the plaintiff's agent had received it and was holding it as plaintiff's property; and if so, it received and held it in payment of the sight draft.

It has, therefore, been finally adjudicated that the plaintiff has a claim against the receiver for $2,328.96, and a preference for $507.91 of that amount. Plaintiff has an adjudicated general claim against the receiver for the balance, of $1,821.05. It has been adjudicated further, between the receiver and the Nevada Poultry Company, that the Nevada Poultry Company had an overdraft of $1,821.05, and that this overdraft has been paid. This is not, and could not be, a proceeding to review the adjudication establishing plaintiff's claim against the bank, or to review the adjudication as between the defendants that the overdraft has been paid. On the record which the parties themselves have made, it has been established (and plaintiff now contends, in substance) that the sight draft was paid to the plaintiff's agent, the People's Savings Bank, whereby the People's Savings Bank became liable to the plaintiff for the amount of the sight draft or for the price of the car of poultry. That liability and its establishment by judgment of the court remain in full force. Plaintiff is seeking to recover the $507.91 which the receiver tenders, and the overdraft of $1,821.05, as a ''chose in action,'' representing the proceeds of the sight draft; but the undisputed evidence is that the overdraft has been settled by order of the court. While that order remains in force, and until it is set aside by proper proceedings, the plaintiffs are not entitled to compel the Nevada Poultry Company to pay to plaintiff the overdraft. The judgment appealed from does not require the Nevada Poultry Company to pay to plaintiff the overdraft which is the cause of action alleged, but to pay ''the balance of the purchase price of said poultry, namely, $1,821.05,'' which plaintiff nowhere in his petition claims. The judgment establishes a claim in behalf of the Nevada Poultry Company against the People's Savings Bank for $1,821.05, ''as a depositor's claim, enforcible by it against the receiver;'' while another judgment is in full force, establishing that same claim as in part a preferred claim and in part a general claim; but no such claim is made in this case in any pleading. The Nevada Poultry Company sets up no cause of action or

claim of any kind against the bank or the receiver. It is true that the Nevada Poultry Company, after the commencement of the trial, filed "amendment to their answer," amending the prayer as follows:

"'Wherefore defendant prays that they have decree dismissing the plaintiff's petition at his costs, and that the court grant such other and further equitable relief as to the court may seem just and equitable, as between all of the parties to this action;" but this was tendering no issue against the People's Savings Bank or the receiver.

It is quite probable that, if the plaintiff, when the bank draft was protested, had tendered it to the Nevada Poultry Company, plaintiff would have been entitled to claim of the Nevada Poultry Company that the carload of poultry was unpaid for, and would have been entitled to recover from the Nevada Poultry Company the price of the poultry. In that event, the Nevada Poultry Company would have been entitled to tender to the receiver the bank draft and to have the charge of the check against its account canceled. The overdraft would have been thereby approximately canceled, and on its other claims, the Nevada Poultry Company would resultingly have had a depositor's claim for approximately the amount of the overdraft. The evidence does not show what dividends will be paid to depositors, but the Nevada Poultry Company would have been entitled to that dividend. If it is said that this is substantially what the court did by the judgment appealed from, the answer is that this is not what the plaintiff is claiming in its petition,— is not the subject of any issue. The plaintiff is not, even though it were able to, surrendering its allowed claim against the receiver. This claim is only a general claim, but the plaintiff is claiming the benefit of it. If plaintiff were making the claim for which the court gave plaintiff judgment, it is quite likely that the Nevada Poultry Company could, on this record, set up one or more estoppels. A member of the Nevada Poultry Company testifies:

"J. T. Enterline & Son never made any claim, as against our company or myself, by virtue of the sight draft or bill of lading referred to in this trial, before the institution of the suit now on trial. Nor did they ever advise me not to make further pay-

ment to the People's Savings Bank or its receiver, with reference to this sight draft and bill of lading * * * At the time and before my settlement with Mr. Semans, the receiver [examiner in charge], it was not my business to make any inquiry as to whether Enterline had been paid or not. I did not make any adjustment with Mr. Semans. The court made it. I did not have any talk with Mr. Semans, only as to what the court had allowed on the claim."

So the court has entered two judgments here, which are entirely outside the scope of the issues, as to which the parties have not been heard, and as to which there are existing, conflicting adjudications, which remain in full force. The plaintiff has an established claim, in part general, and in part preferred, against the receiver, and by the judgment appealed from, has also a judgment against the Nevada Poultry Company. The one is (in effect) a judgment against the People's Savings Bank (or its receiver) on the bank draft. That judgment (the allowed claim) establishes that the plaintiff is the owner of the bank draft, and resultantly, that the bank draft paid for the sight draft for which it was taken. It establishes that the carload of poultry was paid for by the bank draft. The judgment appealed from proceeds upon the unpleaded theory that the carload of poultry has not been paid for.—*Reversed.*

Evans, Stevens, Kindig, and Wagner, JJ., concur.